UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PLASTIC RECOVERY TECHNOLOGIES, CO., )
and KEVIN GAVIN, )
)
                Plaintiffs, )
)
  vs. )      11 C 2643
)
JERRY SAMSON, )
)
                Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the motion of Defendant Jerry Samson ("Defendant" or "Samson") to dismiss the complaint of Plaintiffs Plastic Recovery Technologies, Co. ("Plastic Recovery") and Kevin Gavin ("Gavin") (collectively, "Plaintiffs") pursuant to Section 6 of the Federal Arbitration Act, 9 U.S.C. § 6, and Federal Rule of Civil Procedure 12(b)(6). This Court converts Plaintiffs' complaint into a motion to vacate and treats Defendant's motion to dismiss as its response to Plaintiffs' motion to vacate. For the reasons stated below, Plaintiffs' motion to vacate is denied.

## BACKGROUND

### I. The Parties

Gavin is the President of Plastic Recovery, a company that provides replacement parts to the waste industry. Beginning in February 2009, Samson spoke with Gavin

concerning potential employment at Plastic Recovery. In May 2009, Samson and Plastic Recovery executed an employment agreement (the "Employment Agreement"). According to the Employment Agreement, Samson would begin working for Plastic Recovery on July 1, 2009. Among other benefits, Plastic Recovery agreed to pay Samson a base compensation of $10,000 per month and a guaranteed compensation of $5,417 for 12 months. The Employment Agreement contained an arbitration clause which required any claim or controversy arising out of, or related to, the Employment Agreement to be settled by arbitration.

## II.  The Arbitration Proceeding

After a relatively brief period of employment, Samson resigned and demanded payment from Plastic Recovery pursuant to the Employment Agreement. Because Plastic Recovery refused to pay the money to Samson, on December 3, 2009, Samson initiated arbitration proceedings with the American Arbitration Association ("AAA") pursuant to the arbitration clause in his Employment Agreement.

Throughout the arbitration, Plaintiffs objected to the fees charged by the AAA and refused to pay the AAA for administrative fees or the arbitrator's fees. The AAA initially scheduled the arbitration hearing for two full days, but later planned to suspend the arbitration because Plaintiffs failed to pay their portion of the fees. Rather than suspend the hearing, the arbitrator agreed to shorten the hearing to one day. Plaintiffs

objected, arguing that a one-day hearing would prejudice them because they would not have sufficient time to present their case. On December 6, 2010, the arbitrator responded to Plaintiffs' objection. The arbitrator stated that the matter could be easily heard in a single day, since Plaintiffs had not identified any witnesses or exhibits. Even so, the arbitrator agreed to extend the hearing to two days if Plaintiffs could demonstrate that they needed an additional hearing day (by filing a list of witnesses and exhibits) and that the arbitrator's time for the second day would be compensated. For reasons that are unclear from the record, the arbitration hearing was not extended to two days.

On December 8, 2010, the parties presented evidence at the arbitration hearing. At the end of the day, the parties agreed to submit post-hearing briefs. At that time, the arbitrator asked both counsel about compensation for her time spent reviewing the briefs. During the course of the conversation, the arbitrator learned that Plaintiffs had previously refused to pay their fees. Both parties agreed to compensate the arbitrator for her time spent reviewing the post-hearing briefs. Plastic Recovery submitted a check to the AAA, which stated that the AAA, by endorsing the check, acknowledged that Plastic Recovery was prejudiced by the arbitrator's knowledge of its non-payment of fees.

On January 5, 2011, Plaintiffs sent a request to the AAA that the arbitrator recuse herself. On February 3, 2011, the AAA informed the parties that, in accordance with

its rules, the AAA would determine whether to disqualify the arbitrator. The AAA also noted that the arbitrator was not made aware of the recusal request. On February 11, 2011, the arbitrator rendered an award in favor of Samson (the "Arbitration Award").

## V.     Plaintiffs' Complaint and Samson's Motion to Dismiss

On March 8, 2011, Plaintiffs filed a complaint in the Circuit Court of Cook County, Illinois, seeking to vacate the Arbitration Award pursuant to 710 Ill. Comp. Stat. 5/12 of the Illinois Uniform Arbitration Act.[1]  Plaintiffs allege that the arbitrator exhibited evident partiality towards Samson because Plaintiffs initially refused to pay their fees and ultimately paid their fees under protest. On April 20, 2011, Samson removed the action to the United States District Court for the Northern District of Illinois. Samson now moves to dismiss the complaint.

## VI.    Preliminary Procedural Issues

Under the Federal Arbitration Act ("FAA"), applications made to the court should be "made and heard in the manner provided by law for the making and hearing of motions."  9 U.S.C. § 6.  This provision removes actions to confirm or vacate arbitration awards from the realm of civil cases governed by the Federal Rules of Civil Procedure. *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 570 (7th Cir. 2007).  When a

---

[1] Although Plaintiffs originally sought to vacate the Arbitration Award under the Illinois Uniform Arbitration Act, in their opposition, Plaintiffs seek to vacate the Arbitration Award under the Federal Arbitration Act ("FAA"). Both parties now agree that the FAA applies in this case.

party seeks to vacate an arbitration award, the party should not file a "complaint" or any other filing conceived by the Federal Rules of Civil Procedure. *Id.* at 571. Because the Federal Rules of Civil Procedure do not apply, the party challenging the award should file a motion to vacate the arbitration award and provide the court with all matters it would like the court to consider in support of the motion to vacate. *Id.* at 571. In response, the other party should file a motion to confirm the arbitration award and also provide the court with supporting documentation. *Id.*

Here, Plaintiffs filed a complaint, seeking to vacate the Arbitration Award. To procedurally align the case with the requirements of the FAA, the Court converts Plaintiffs' complaint into a motion to vacate the Arbitration Award. Because Plaintiffs failed to file any supporting documentation with their initial complaint, the Court considers the documents Plaintiffs filed with their opposition to Samson's motion to dismiss. Since Plaintiffs filed supporting documentation with their opposition, Plaintiffs' request for leave to amend is denied as moot. Finally, this Court treats Samson's motion to dismiss as a response to Plaintiffs' motion to vacate.

## LEGAL STANDARD

Upon the application of a party to the arbitration, a district court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). To prove evident partiality, the plaintiff must demonstrate that the

arbitrator's bias is direct, definite, and capable of demonstration rather than remote, uncertain, or speculative. *Harter v. Iowa Grain Co.*, 220 F.3d 544, 553 (7th Cir. 2000). The mere appearance of bias is insufficient to demonstrate evident partiality. *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992).

**DISCUSSION**

Plaintiffs ask this Court to vacate the Arbitration Award because the arbitrator exhibited evident partiality. Plaintiffs claim that the arbitrator became biased in favor of Defendant after learning that Plaintiffs refused to pay their arbitration fees. Plaintiffs argue that the following acts support their claim of evident partiality: (1) the arbitrator's decision to shorten the arbitration hearing to one day; (2) the arbitrator's discussion of her compensation with counsel; (3) the AAA's refusal to disqualify the arbitrator; and (4) the language used by the arbitrator in the Arbitration Award. Plaintiffs do not claim that the Arbitration Award lacks factual or legal support.

First, Plaintiffs claim that the arbitrator impaired Plaintiffs' case by shortening the arbitration hearing to one day. However, the arbitrator's decision to shorten the hearing to one day did not demonstrate direct and definite bias. The AAA planned to suspend the arbitration hearing because Plaintiffs failed to pay their fees. To avoid the suspension, the arbitrator agreed to shorten the hearing to one day because she believed that the case only required one hearing day, especially since Plaintiffs had not identified

any witnesses or exhibits. After Plaintiffs objected to shortening the hearing, the arbitrator agreed to extend the hearing to two days if Plaintiffs could demonstrate that they needed an additional hearing day (by filing a list of witnesses and exhibits) and that the arbitrator's time for the second day would be compensated. For reasons that are unclear from the record, the arbitration hearing was not extended to two days. Significantly, the arbitrator's decision not to extend the hearing could not have resulted from the alleged bias because the arbitrator did not know at that time which party had failed to pay their fees. Moreover, Plaintiffs do not state how the shortened hearing allegedly impaired their case. *Lefkowitz v. Wagner*, 291 F. Supp. 2d 764, 770 (N.D. Ill. 2003) ("Even on a clear showing of misconduct . . . the party seeking to vacate an arbitrator's order must show that it was deprived of a fair hearing."). For example, Plaintiffs do not claim that they were unable to present all of their witnesses or exhibits. For these reasons, the arbitrator's shortening of the arbitration hearing did not exhibit evident partiality.

Second, Plaintiffs argue that, after the arbitration hearing, the arbitrator discussed with both parties' counsel her compensation for the post-hearing briefs and, by doing so, committed an ethics violation. According to the AAA's Code of Ethics for arbitrators, "communication related to compensation should be made through" the AAA. Canon VII(B)(2) of the Code of Ethics for Arbitrators in Commercial Disputes.

The arbitrator's discussion with counsel did not violate the AAA's Code of Ethics, as the Code of Ethics merely states that an arbitrator "should" and not "must" discuss compensation through the AAA. Moreover, even a technical violation of the Code of Ethics would not justify setting aside an arbitration award on the ground of evident partiality. *Merit Ins. Co v. Leatherby Ins. Co.*, 714 F.2d 673, 681 (7th Cir. 1983) (explaining that the Code of Ethics does not lower the threshold for judicial intervention). Further, Plaintiffs fail to demonstrate any direct and definite bias stemming from the arbitrator's compensation inquiry. Accordingly, the arbitrator's discussion regarding compensation, and directed at both parties' counsel, did not exhibit evident partiality.

Third, Plaintiffs argue evident partiality existed because the AAA refused to disqualify the arbitrator. Plaintiffs fail to demonstrate how the AAA's decision not to disqualify the arbitrator evidences evident partiality by the arbitrator. Moreover, Plaintiffs do not dispute that the AAA followed its protocol in determining whether to disqualify the arbitrator. AAA Employment Arbitration Rule 16(b) (stating that the AAA is responsible for determining whether the arbitrator should be disqualified and the AAA's decision is final). The AAA's decision thus did not evidence bias by the arbitrator.

Finally, Plaintiffs claim that the language used in the Arbitration Award demonstrates the arbitrator's bias. When ordering the Plaintiffs to pay all of the arbitrator's fees, the arbitrator justified her decision by stating that the Plaintiffs "consistently demonstrated nothing short of contempt for this process . . . [and] initially raised groundless objections to the arbitration of this matter and refused to participate in conference calls." The arbitrator also stated that Plaintiffs' "bad faith demonstrated a lack of respect for their contractual commitment, the arbitral process, and the other participants in that process." Plaintiffs cite no case holding that this type of language demonstrates evident partiality. Further, the arbitrator's statements do not demonstrate direct and definite bias, as the arbitrator simply articulated her reasons for ordering Plaintiffs to pay the fees. Plaintiffs do not dispute the fact that they objected to the arbitration and refused to participate in conference calls. The language used in the Arbitration Award does not exhibit evident partiality.

## CONCLUSION

For the foregoing reasons, this Court denies Plaintiffs' motion to vacate the Arbitration Award.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: __July 28, 2011__